UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PETER HALAS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civ. No. 15-2533 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.**

## I.    INTRODUCTION

Petitioner, Peter Halas, is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the following reasons, Mr. Halas's § 2255 motion will be denied.

## II.    BACKGROUND AND PLEADINGS

### A. The Underlying Criminal Proceeding

The Court of Appeals for the Third Circuit succinctly described the underlying circumstances as follows:

> In June 2010, in an interview with FBI agents, Halas admitted to searching for child pornography and saving images to his hard drive. The agents searched Halas's home and, with his consent, seized his computer along with several compact disks and external hard drives. FBI officials eventually discovered almost 3,000 images of child pornography.

*United States v. Halas*, 545 F. App'x 176, 177 (3d Cir. 2013). A criminal complaint was filed against Mr. Halas on July 13, 2010, charging him with one count of knowing possession of child pornography, as defined by 18 U.S.C. § 2256(8), in violation of 18 U.S.C. § 2252A(a)(5)(B). *United States v. Halas*, Crim. No. 11-290 (D.N.J.), Compl., ECF No. 1. At an initial appearance,

then-Magistrate Judge Madeline Cox Arleo assigned Assistant Federal Public Defender K. Anthony Thomas to represent Mr. Halas. Crim. No. 11-290, Order (July 13, 2012), ECF No. 3. A grand jury indicted Mr. Halas in April 2011 for the count charged in the complaint. Crim. No. 11-290, Indict., ECF No. 14.

On January 23, 2012, Mr. Halas submitted an Application for Permission to Enter Plea of Guilty. Crim. No. 11-290, ECF No. 22. He appeared for a sentencing hearing before then-Magistrate Judge Patty Schwartz the same day. (*See* Ans., Ex., Tr. of Guilty Plea (Jan. 23, 2012), ECF No. 9-1.) Mr. Halas acknowledged, under oath, that he understood his rights as a criminal defendant and the rights he gave up by pleading guilty. (*Id.* at 6–9.) He further represented that he was not induced to plead guilty by any promises or threats and was pleading guilty because he was in fact guilty.[1] (*Id.* at 9–10.) Mr. Halas raised a question regarding mere possession versus *knowing* possession, and Judge Schwartz explained that an element of the crime that would have to be proven at trial would be that Mr. Halas knew he possessed child pornography. (*Id.* at 10.) Mr. Halas affirmatively responded to Judge Schwartz's subsequent question to confirm that he was, "in fact, guilty of the crime charged, that is the knowing possession of child pornography." (*Id.*)

Mr. Halas subsequently admitted to various facts underlying the charges, including that "[a]s late as June 30, 2009, [he] store[d] computer images containing child pornography," that he stored more than three such images, that he knew that images he possessed contained depictions of minors engaged in sexually explicit conduct and posing in a sexually explicit manner, that he believed the images depicted actual children, that he possessed the images knowingly and voluntarily, and that he was guilty of the crime charged. (*Id.* at 18–20.) Mr. Halas confirmed that

---

[1]    Mr. Halas's signed plea application contained substantially the same representations. *See* Crim. No. 11-290, ECF No. 22.

2

he understood the potential penalties that could be imposed, that he had discussed these with his counsel, and that the sentence would be at the discretion of the sentencing judge, with consideration for the United States Sentencing Guidelines. (*Id.* at 11–14.)

Following the plea hearing, Judge Schwartz issued a Report and Recommendation finding, among other things, that Mr. Halas "fully understood" the charges, the consequences of his plea, and the rights waived by pleading guilty, that Mr. Halas "was fully competent and capable of entering an informed guilty pleas," that his "plea was free, knowing, and voluntary," and that "[t]here [was] a factual basis to support the plea of guilty." *See* Crim. No. 11-290, R. & R. (Jan. 23, 2012), ECF No. 24. No party offered any objection to this Report and Recommendation. District Judge Faith S. Hochberg, to whom the case was then assigned, subsequently issued an Order adopting it. Crim. No. 11-290, Order (Feb. 8, 2012), ECF No. 25.

On December 17, 2012, Mr. Halas appeared for a sentencing hearing before Judge Hochberg. *See* Crim. No. 11-290, Tr. of Proceedings (Dec. 17, 2012), ECF No. 46. Addressing an objection by Mr. Halas to inclusion of the results of an FBI-administered polygraph examination in the presentencing report, Judge Hochberg stated that she would not consider that result in any way for the sentencing, but that the result should remain in the report to help guide Mr. Halas's treatment. *Id.* at 3. Mr. Thomas proposed, as an alternative, removing the reference from the presentencing report itself, but including the polygraph report as an attachment, and Judge Hochberg accepted that proposal. *Id.* at 3–4.

While expressing some apparent skepticism as to Mr. Halas's actual acceptance of responsibility, Judge Hochberg ultimately awarded a three-point reduction under the sentencing guidelines for that factor. *See id.* at 8–15, 43–44. Mr. Thomas made an application for a downward variance based on the images' not containing sadomasochism, because his use of a

3

computer in committing the seemingly ordinary circumstances of the crime, and the arbitrariness of the sentencing enhancement for persons who possess over 600 images of child pornography. *See id.* at 15–24. Mr. Halas was given an opportunity to address the court. He primarily urged that the images had been downloaded in 1998 or 1999 and that he "almost forgot about them." *Id.* at 24–28. Considering these factors, Judge Hochberg denied the application for a variance, and sentenced Mr. Halas to 51 months of imprisonment, the lightest possible sentence within the applicable sentencing range, followed by five years of supervised release under conditions that included computer monitoring, mental health treatment, restricted contact with minors, and periodic polygraph testing. *Id.* at 37–49; *see also* Crim. No. 11-290, J. (Dec. 17, 2012), ECF No. 37.

Mr. Halas appealed his sentence to the Third Circuit. *See Halas*, 545 F. App'x 176. His attorney, Mr. Thomas, filed an *Anders* brief, asserting a lack of non-frivolous grounds for appeal, and the Third Circuit permitted him to withdraw his representation. *Id.* at 177. Mr. Halas filed a pro se brief, arguing that Judge Hochberg should have applied a downward departure based on the contents of a psychological report and, alternatively, that the failure to request such a downward departure constituted ineffective assistance of counsel. The Third Circuit held that it lacked jurisdiction to review discretionary sentencing departures, including failures to grant unrequested departures, and that ineffective-assistance-of-counsel arguments should be addressed upon collateral review. *See id.* at 178–79. Mr. Halas further argued that the criminal charge should have been barred by the statute of limitations, as the subject images were downloaded in 1998 or 1999, but the Third Circuit found that Mr. Halas had waived his statute-of-limitations argument by entering into an unconditional guilty plea. *Id.* at 179.

### B. This § 2255 Motion

On April 9, 2015, Mr. Halas, acting pro se, filed a § 2255 motion to vacate, set aside, or correct his sentence. (ECF No. 1.) Judge Hochberg having retired, the matter was reassigned to me. I initially administratively terminated the proceeding without prejudice because Mr. Halas's motion was not submitted on the proper form, as required by Local Civil Rule 81.2(a). (Mem. & Order (Apr. 21, 2015), ECF No. 2.) Shortly thereafter Mr. Halas filed a new § 2255 motion, which is now the operative pleading. (ECF No. 3.) It claims three grounds for relief, each framed as a claim of ineffective assistance of counsel. (*See id.*)

First, Mr. Halas contends that Mr. Thomas provided ineffective assistance by failing to sufficiently raise alleged Fourth Amendment violations related to the initial discovery of child pornography on Mr. Halas's computer. (*Id.* at 5.) Specifically, Mr. Halas alleges that "a person working for or with the FBI, a de facto agent, came into the Petitioner's home, searched his computer without his knowledge . . . and reported him to the FBI." (*Id.* (ellipsis in original).) Mr. Halas asserts that the government "should have provided a copy of the email that was used to inform them about the Petitioner and also should have turned over dates/times of other cases this person called in and provided other emails used for reporting people." (*Id.*) Mr. Halas seems to e referring to the computer technician he asked to fix his computer. That technician, he states or implies, may have engaged in a pattern of reporting possession of child pornography, thus rendering him a de facto government agent. As such, he would allegedly have been subject to Fourth Amendment restrictions on searches and seizures. (*See id.*; *see also* ECF No. 1 at 2.)[2]

Second, Mr. Halas argues that Mr. Thomas was ineffective in connection with arguments concerning the dates that the child pornography was downloaded. (ECF No. 3 at 6.) The

---

[2] The original pleading, submitted on the incorrect form, is no longer operative. I nevertheless have referred to it in an effort to understand and explain Mr. Halas's claims.

5

argument seems to be, at least in part, that Mr. Thomas failed to argue that the charges were brought after the expiration of the applicable statute of limitations. Mr. Halas also contends that his possession should have been considered "constructive" rather than knowing; his possession, he says, was purely passive, and "in effect, there was coercion and manipulation into pleading to 'knowingly possessing' to what actually was constructive possession (passive conduct)." (*Id.*; *see also* ECF No. 1 at 2, 3.)

Third, Mr. Halas argues that the number of images of child pornography he possessed were "overcounted." (ECF No. 3 at 8.) Some of the images, he says, may have been duplicate or back-up copies, and he insists that it was never determined whether all of the images were actually lascivious, were actually of someone under 18 years old, and were actually looked at by Mr. Halas. (*Id.*)

Mr. Halas has also alluded, in various filings, to his belief that the results of his polygraph examination should not have been used in his criminal proceedings. (*See* ECF No. 3 at 17; ECF No. 1 at 3.) His original petition stated Mr. Thomas's proposal that the polygraph result be attached to Mr. Halas's presentence report was a "blatant example" of Mr. Thomas's breach of the duty of loyalty to his client. (ECF No. 1 at 3.)

In opposition to the petition, the United States, argues that Mr. Halas has failed to show either that Mr. Thomas's representation was deficient or that Mr. Halas suffered any prejudice from the alleged ineffectiveness. (*See Mem. in Opp'n*, ECF No. 9, at 14–30.) It contends that there is no reasonable probability that Mr. Halas would have proceeded to trial under any circumstances, given the overwhelming evidence against him, the fact that he has not actually disavowed his guilt, and the favorable plea that Mr. Thomas obtained for him. (*Id.* at 16–18.) No suppression motion as to the child pornography discovered on Mr. Halas's computer could have

been successful, says respondent, because he consented to the private computer technician's inspection of his computer and subsequently consented to the FBI's search and seizure of his computer. (*Id.* at 19–20.) Respondent also stresses that, during his initial interview with FBI agents, Mr. Halas "admitted to having saved hundreds of images of child pornography on his computer, three external hard drives, and six compact disks." (*Id.* at 21.) It contends that the alleged statute-of-limitations issue has already been litigated on appeal and is frivolous; whether he originally downloaded the child pornography in 1998 or 1999 is irrelevant, because he admittedly possessed it in 2009, well within the statute of limitations. (*See id.* at 21–25.)

Respondent asserts that it does not matter under the sentencing guidelines whether the number of images for applying sentencing enhancements includes duplicates, and, in any case, that the government had identified before sentencing 829 unique images of known child victims—thus exceeding the 600-image threshold employed to enhance Mr. Halas's sentence. (*Id.* at 25–27.) It contends that law enforcement determined that the images possessed by Mr. Halas constituted child pornography and that whether Mr. Halas viewed the images does not matter, as he admitted during his plea hearing that he possessed more than three images of child pornography. (*Id.* at 27–28.) Finally, respondent asserts that Mr. Thomas worked in Mr. Halas's interest by asking for a description of the polygraph results to be removed from the body of the sentencing report and instead for the polygraph results to be included as an attachment. (*Id.* at 29–30.) It stresses that the court clearly indicated that the results of the polygraph examination would not influence Mr. Halas's sentence. (*Id.* at 30.)

In his reply brief, Mr. Halas has withdrawn the issue regarding the number of images, stating that it does not matter because he has completed serving his prison sentence. (Reply, ECF No. 12, § 2.) He adds, however, that inconsistencies in the computer technician's interview notes

7

raise doubts as to the technician's credibility. (*Id.* § 3.) He reiterates that the conviction should be set aside based on the statute of limitations, as all images were downloaded in 1998 or 1999. (*Id.* § 4.) Mr. Halas again contends that he did not understand until his sentencing hearing that he was pleading to knowing possession, rather than constructive or passive possession, of child pornography, because Mr. Thomas had misled him with "an incorrect Form." (*Id.* § 5.) Mr. Halas claims that he "refused to sign a Fully Stipulated Plea Agreement, as strongly advised by his then Public Defender . . . because he did not 'KNOWINGLY' know anything." (*Id.*)

### III. ANALYSIS

#### A. Legal Standards

To grant relief on a federal prisoner's motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255, the Court must find that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). A district court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62).

Mr. Halas seems to intend that all of his arguments be considered as components of a claim for ineffective assistance of trial counsel. (*See* ECF Nos. 1 & 3.) The Sixth Amendment guarantees defendants effective assistance of counsel during critical portions of a criminal proceeding. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012). The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), articulated a two-prong burden for demonstrating the

8

ineffectiveness of counsel: (1) that, considering all relevant circumstances, counsel's performance fell below an objective standard of reasonableness and (2) that the petitioner suffered prejudice as a result. *Id.* at 687–96; *see also Grant v. Lockett,* 709 F.3d 224, 232 (3d Cir. 2013).

In addressing the first prong, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Counsel's strategic choices made after thorough investigation of the relevant law and facts are "virtually unchallengeable," while choices made with less than entirely thorough investigation "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91; *see also Rolan v. Vaughn,* 445 F.3d 671, 682 (3d Cir. 2006); *Gov't of V.I. v. Weatherwax,* 77 F.3d 1425, 1432 (3d Cir. 1996). Whether counsel acted in a manner that was deficient is measured by a standard of "reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 687–88; *see also Wiggins v. Smith,* 539 U.S. 510, 521 (2003).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove resulting prejudice. *See* 466 U.S at 693. Prejudice is generally found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine

confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citation omitted).

In the context of plea agreements, this prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012); *United States v. Jesus-Nunez*, 576 F. App'x 103, 105 (3d Cir. 2014).

The *Strickland* Court made clear that a court may apply the two prongs in whatever order it sees fit. 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010).

### B. Alleged Failure to Raise Unlawful Search Arguments

Mr. Halas asserts is that Mr. Thomas failed to sufficiently investigate or argue that the discovery by a computer technician of child pornography on Mr. Halas's computer constituted an unlawful search or seizure in violation of the Fourth Amendment. (*See* ECF No. 3 at 5.) From the

face of Mr. Halas's filings, however, it is clear that no potentially successful Fourth Amendment argument could have been raised.

First, the search and seizure provision of the Fourth Amendment does not apply to independent, private actors, like the computer technician in this case. *United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984) (holding that Fourth Amendment search and seizure clause "is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official" (internal quotation marks omitted)); *see also Burdeau v. McDowell*, 256 U.S. 465, 475–76 (1921); *Johnson v. United States*, 971 F. Supp. 862, 866–67 (D.N.J. 1997). To address this issue, Mr. Halas contends that his counsel should have obtained a copy of the email that the computer technician sent to the FBI and additional information regarding instances when the same computer technician had reported other persons to the FBI, so as to craft an argument that the technician was a "de facto" government agent. (ECF No. 3 at 5; *see also* ECF No. 1 at 2; ECF No. 12 § 3.) The Court is unaware of any precedent supporting an argument that a private party who reports crimes, or even engages in a pattern of reporting crimes, becomes a de facto government agent.[3] In any case, Mr. Halas seems to concede that Mr. Thomas in fact did ask the government whether there was a history of cooperation between the technician and the government and was told that there was not. (*See* ECF No. 3 at 5 ("The Public Defender was told by the government that there was NO connection between them and this de facto agent."); ECF

---

[3] In connection with this argument, Mr. Halas urges the Court to examine the case "Eric McDavid v United States of America, Ninth Circuit (January, 2015) 2:06-CR-0035-MCE Judge Morrison C. England Jr." In that case, *United States v. McDavid*, Crim. No. 06-35 (MCE) (EFB) (E.D. Cal.), it appears that the defendant's sentence was reduced to time served consistent with a settlement agreement entered into between the defendant and the government. *See id.*, ECF Nos. 459, 461, & 463. McDavid's § 2255 petition had alleged, among other things, violations of the government's duty to produce potentially exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). *See id.*, ECF No. 459.

No. 12 § 3 ("Petitioner was told at the time that his lawyer will ask for, in writing, information about this matter. But was told . . . there is nothing to provide him." (ellipsis in original)).)

Mr. Halas's pleading includes no factual allegations that would support the idea that the computer technician was in fact working with the government. (*See* ECF No. 3 at 5.) He simply hypothesizes that this is so and that documents, if obtained, would have established it. Halas's papers state clearly that he, Halas, called the technician, who is employed by a firm called XCentrex, because the computer was "behaving inconsistently." (ECF no. 12 at 2–3)

Halas does argue, in his reply brief, that inconsistencies in notes from an FBI interview of the technician undermine the credibility of the technician's account. In the statement, the technician says he removed Mr. Halas's computer to repair it, while Mr. Halas contends that the purpose was to transfer files to a new computer. In the statement, the technician sys he removed a virus from the computer, while Mr. Halas contends that there was no virus (though he does say he called the technician because the computer was "behaving inconsistently").[4] (ECF No. 12 at 2– 3.) It is not the technician who testified inconsistently; Mr. Halas merely suggests that he would have testified to the contrary. At any rate, it is completely unclear how these inconsistencies might suggest that the computer technician was acting as a government agent. Such a finding would have been a necessary prerequisite to any Fourth Amendment claim.

Finally, even assuming *arguendo* that the technician was a government agent, it is clear from Mr. Halas's papers that he consented to the technician's examination of the computer. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (finding it "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent"). In his reply, Mr. Halas recounts that he began

---

[4] Mr. Halas admits, however, that he does "not suggest that [the technician] was on the FBI's payroll, or that he got some financial gain from what he did." (ECF No. 12 § 3.)

having computer problems in June 2009 and so "called someone to look at it, who has worked for him in the past." (ECF No. 12 § 1.) He states that the technician "strong armed Halas into letting him take" the computer, but that Mr. Halas "agreed, for he did not have any apprehension as to what was on the computer." (*Id.* § 3.) Later in the reply, Mr. Halas also notes "that he admitted a virtual stranger into his home, and even let him take his computer with him (in order to copy the data on it onto a new computer about to be purchased from the de-facto agent)," further asserting that he "had absolutely no fear of the faintest apprehension that ANY of the images on his machine were 'illegal'." (*Id.* § 5.) So Mr. Halas is not even really claiming that the search was involuntary; at best he is claiming that he unwisely granted access because he forgot or did not know it contained illegal images.

Applying the highly deferential examination required by *Strickland*, the Court does not find that Thomas's conduct was deficient in these circumstances. *Strickland* found that an attorney "has a duty to make *reasonable* investigations." 466 U.S. at 691 (emphasis added); *cf. United States v. Travillion*, 759 F.3d 281, 293 n.23 (3d Cir. 2014) (noting that "the failure to conduct *any* pretrial investigation generally constitutes a clear instance of ineffectiveness" (emphasis added; internal quotation marks omitted)). There were no surface indications that the technician was a government agent. Nevertheless, as Mr. Halas concedes, Mr. Thomas asked the government to identify any connection it had with the technician and received the answer that there were none. There is no fact-based contention that the government failed to provide discovery that it was obligated to provide under the Federal Rules or *Brady*. Thomas made a reasonable investigation under the circumstances; even now, Mr. Halas offers no evidence or reason to believe the technician was working for or with the government. It appearing conclusively that the computer technician was a private individual, Mr. Thomas had no duty to

13

raise inapplicable and frivolous Fourth Amendment arguments. Because no legal basis existed for a suppression motion, Mr. Halas cannot show that he suffered any prejudice from Mr. Thomas's failure to do so. Ground one of the petition warrants no relief.

### C. Alleged Failure to Raise Statute of Limitations and Coercion Issues

Mr. Halas raises general concerns about the timing of the download of the images. These concerns encompass two distinct arguments: (1) that Mr. Thomas should have raised a defense under the statute of limitations; and (2) that Mr. Halas's ongoing possession of the images should not have been considered "knowing" and that he was therefore misled or coerced into pleading guilty. (*See* ECF No. 3 at 6; ECF No. 12 §§ 4–5.)

I perceive no deficiency in Mr. Thomas's failure to raise a statute of limitations defense. The presence of the images on the computer was discovered on June 30, 2009, and the indicmtne charges Mr. Halas with their possession as of that date. He was indicted less than two years later, on April 27, 2011—well within the five-year statute of limitations for child-pornography prosecutions. *See* 18 U.S.C. § 3282(a). Furthermore, Mr. Halas admitted during his plea colloquy that he knowingly possessed child pornography as of June 2009. (ECF No. 9-1 at 18.) Given that admission, Mr. Halas can have suffered no prejudice from Thomas's failure to make a meritless statute-of-limitations argument.

Mr. Halas's argument concerning whether his possession was knowing and whether his guilty plea was voluntary is similarly disposed of by reference to the record. Under oath, during the plea hearing, Mr. Halas admitted knowing possession. Indeed, he specifically raised the issue of the difference between mere possession and knowing possession. (ECF No. 9-1 at 9–10.) In response, Judge Schwartz instructed him as to the difference:

> Well, the crime that's charged is a possession of child
> pornography. And among the things that would have to be proven

> is that you knew what you possessed was, in fact, an item of child pornography. That is an element of the crime. And that is also expressly charged in the indictment that you indicated you have reviewed.
> So I will ask you again, sir, are you pleading guilty because you are, in fact, guilty of the crime charged, that is the knowing possession of child pornography?

Mr. Halas answered "Yes." (*Id.* at 10.)

As for general voluntariness, Mr. Halas confirmed under oath that he was not pleading guilty based on any promises or threats, but because he was actually guilty. (*Id.* at 9–10.) Mr. Halas makes no factual allegations to support the claim that he was coerced into pleading guilty. He seems to mean only that he did not intend to plead guilty to *knowing* possession of child pornography, but merely to constructive or passive possession. (ECF No. 3 at 6; ECF No. 12 § 5.) Even construing his allegations as a claim that Thomas failed to instruct him adequately, or even misled him, I must find that any misunderstanding was definitively dispelled by Judge Schwartz during the plea colloquy quoted above. (*See* ECF No. 9-1 at 9–10.)

In addition, this plea incorporated a second opportunity to object; it took the form of a Magistrate's Report and Recommendation, which did not become effective until adopted by then-District Judge Hochberg. If Mr. Halas had felt rushed or coerced into accepting a guilty plea, he had the opportunity to file an objection, but he did not do so. For this reason, too, Mr. Halas could not have suffered any prejudice from Thomas's alleged ineffective assistance relating to the guilty plea. Ground two provides no basis for relief.

### D. Alleged "Overcounting" of Images

The operative pleading identifies the third ground for relief as "overcounting" of images. Mr. Halas originally argued that his collection, which led to a sentencing enhancement based on possession of more than 600 instances of child pornography, contained duplicates, may have

15

included pictures not actually of minors or that were not lascivious, and, further, that Mr. Halas may not have looked at them in the 1998–99 time frame. (ECF No. 3 at 8.) Mr. Halas has withdrawn this contention, however. "because the time has already been served" and "there is no[] longer any value" in exploring the issue further. (ECF No. 12 at 3.) I therefore will not discuss the government's arguments in opposition, and will treat this contention as having been withdrawn.

### E. Arguments Related to the Polygraph Results

Though the petition does not assert any ground for relief related to Mr. Halas's polygraph examination, he does mention it in an attachment, and I note that his original motion included it as a distinct ground for relief. (*See* ECF No. 1 at 3; ECF No. 3 at 17.) Mr. Halas asserts that polygraph examinations are unreliable and should not be employed in criminal cases. Mr. Thomas's proposal that the polygraph results be attached to Mr. Halas's presentencing report, instead of being included therein, he regards as a breach of Thomas's duties as an attorney. (*See* ECF No. 1 at 3; ECF No. 3 at 17.) Even were this issue properly before the Court, it would not warrant any relief.

Judge Hochberg was of the opinion that the polygraph results should remain in the PSR because they could be relevant to psychological treatment. (*See id.*) Mr. Thomas's counterproposal that the results be attached was seemingly an attempt to limit their availability or effect, a strategic choice by Mr. Thomas of the type that is considered "virtually unchallengeable." *Strickland*, 466 U.S. at 690–91.

More importantly, Judge Hochberg explicitly stated during the sentencing hearing that she would not consider the polygraph results in determining a sentence. Mr. Halas cannot have suffered any prejudice from the polygraph results. *See* Crim. No. 11-290, ECF No. 46 at 3–4.

## IV. CONCLUSION

For the foregoing reasons, Mr. Halas's § 2255 motion will be denied on the merits. It is apparent from the petitioner's filings and the record of the underlying criminal proceeding that an evidentiary hearing is not required because Mr. Halas would not be entitled to relief based on the contentions in his motion. *See Booth,* 432 F.3d at 545. An appropriate order will be entered.

DATED: June 28, 2018

KEVIN MCNULTY
United States District Judge